IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 113-010 |
| | ) | |
| MATTHEW HARRINGTON | ) | |

**O R D E R**

Before the Court is Defendant's probable cause challenge to the government's petition for revocation of Defendant's supervised release. (Doc. no. 513.) After a hearing in which it found probable cause for Violation Two of the petition, the Court ordered supplemental briefing as to Violation One. (Doc. nos. 522, 523.) Upon consideration of the briefs and hearing, the Court finds probable cause does not exist as to Violation One.

**I.  BACKGROUND**

On December 7, 2016, the government petitioned the Court to revoke Defendant's supervised release based on two violations. (Doc. no. 513.) In Violation One, the government alleges Defendant committed a crime by stealing a tractor trailer loaded with new washers and dryers from Neighbors Exxon in Dublin, Georgia. (Id.) In Violation Two, the government alleges Defendant unlawfully used a controlled substance based on two urine screens that tested positive for marijuana. (Id.) The Court held a preliminary hearing on December 19, 2016. (Doc. nos. 517, 530.) Court-appointed attorney Mitchell Snyder represented Defendant. (Doc. no. 519; doc. no. 530, p. 1.)

The Court heard testimony from Cpl. Chester Balmer, a Savannah-Chatham County

police officer, Chambliss Stevens, Defendant's probation officer, and Charlene Kennedy, Defendant's mother. (See generally doc. no. 530.) Cpl. Balmer testified extensively concerning Violation One. (Id. at 3-29.) While assisting in the execution of a warrant at the home of Joseph Morris on July 13, 2016, Cpl. Balmer saw brand new washing machines in the backyard. (Id. at 4.) Upon further investigation, Cpl. Balmer determined these washers were inside a commercial trailer that was stolen from a truck stop in Dublin, GA on July 10, 2017. (Id. at 5.) They were originally intended for Best Buy. (Id.)

Cpl. Balmer received a phone call from a confidential informant who claimed to know Defendant and his brother Johnny, both of whom are commercial truck drivers. (Id. at 6, 18.) This confidential informant "indicated that actually Johnny Harrington, [Defendant], their brother Beaufort Harrington, and Joseph Morris were all involved in the theft." (Id. at 6.) The source further informed Cpl. Balmer that Defendant, along with Johnny, drove to the truck stop in Defendant's white truck and hauled the stolen trailer to the Summerside neighborhood in Savannah. (Id.) Defendant, along with Johnny and Joseph Morris, transferred the washing machines into U-Haul trucks and abandoned the trailer along the side of Summerside Road. (Id.) Several stolen washers were taken to a home owned by Defendant's mother on Eastgate Drive in Savannah. (Id. at 7.) The confidential informant gave Cpl. Balmer a screenshot of a GPS tracker purportedly showing Johnny Harrington's phone at the truck stop where the theft occurred at approximately 3:00 a.m. the day of the theft, although she did not identify how she was able to obtain such personal information. (Id. at 7.)

Cpl. Balmer was able to corroborate by independent investigation the overwhelming

2

majority of the confidential informant's information. (Id. at 7-9, 19-20.) The empty trailer was found by law enforcement on Summerside Road. (Id. at 7.) Cpl. Balmer located the house at 3723 Eastgate Drive, which was owned by Defendant's mother, and, after securing a search warrant, found several stolen washers on the property. (Id. at 8-9, 20.) A neighbor across the street also stated she purchased a stolen washer from Defendant's sister, Angela Harrington, for $350. (Id.)

Cpl. Balmer was not able to independently corroborate that Defendant actually was with Johnny Harrington on the night of the theft. (Id. at 20.) Defendant, Johnny, and their mother told Cpl. Balmer the two brothers do not get along. (Id. at 10, 12, 44.) Despite this tension, they did admit to riding with each other two weeks prior to being interviewed by Cpl. Balmer, which was around the time of the theft. (Id. at 10-12.) However, they gave conflicting reports on whose truck they were in—Defendant claimed they were in Johnny's red and white truck, but Johnny claimed they were in Defendant's gray and white truck. (Id.) Neither ever admitted to riding together the night of the theft. (Id.) Furthermore, while Defendant had lived there in the past, only Johnny and Angela lived at the house on 3723 Eastgate Drive at the time of the theft. (Id. at 20-21, 40.) Cpl. Balmer admitted there was little to no evidence outside of the confidential informant to tie Defendant to the theft. (Id. at 26.)

Because Defendant did not have the opportunity to cross-examine the confidential informant, the Court expressed concerns about admitting hearsay testimony through Cpl. Balmer of the informant's allegation that Defendant was involved in the theft. (Id. at 51-54.) The Court further expressed concerns the government could not meet its burden of

3

proof without the informant's testimony because "it sounds like the only thing we have here that ties this defendant specifically to the washing machine situation is the information provided by [the] tipster . . . ." (Id. at 48.)

At the close of the evidence and after hearing arguments from both parties, the Court found probable cause as to Violation Two of the petition, and based on that violation, ordered Defendant detained pending his final revocation hearing before Judge Hall. (Id. at 62-64.) The Court requested briefs from both the government and Defendant regarding Violation One, and withheld making a probable cause finding on that violation until receiving the parties' briefs. (Id. at 64-66.)

## II. DISCUSSION

### A. Legal Standards

Under Rule 32.1(b)(1)(A), a defendant detained for violating a condition of his probation or supervised released is entitled to a preliminary hearing before a magistrate judge to determine whether there is probable cause that the violation occurred. Fed. R. Crim. P. 32.1(b)(1)(A). At this preliminary hearing, the judge must give the defendant, "upon request, an opportunity to question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(1)(B)(iii).

Because the Confrontation Clause of the Sixth Amendment does not apply to revocation proceedings, a judge may admit hearsay testimony from confidential informants without giving a defendant the opportunity to cross-examine them. See United States v. Geathers, 297 F. App'x 885, 886 (11th Cir. 2008) (explaining there is no right to confrontation in supervised release revocation proceedings). However, in deciding whether

4

to admit the hearsay testimony, due process requires the court "balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994); see also Fed. R. Crim. P. 32.1 advisory committee's note, 2002 Amendments ("The court is to balance the person's interest in the . . . right to confrontation against the government's good cause for denying it."). In addition, the Court must find the hearsay statement reliable. Frazier, 26 F.3d at 114.

### B. Defendant's Right to Confront the Confidential Informant Outweighs the Government's Interest in Keeping Her Identity a Secret.

Here, Defendant has a strong interest in confronting the confidential informant. Indeed, the informant's testimony is the only substantial evidence tying Defendant to the crime. (See doc. 530, p. 48.) The government argues that because the informant's testimony is independently verifiable, it is therefore reliable and there is no need for Defendant to cross-examine her. (See doc. no. 532, pp. 8-11.) However, despite being able to corroborate many parts of the informant's story, Cpl. Balmer admitted he "wasn't able to confirm [Defendant] was the driver of the white truck the night that it was stolen . . . ." (Doc. 530, p. 20.) As none of the other independently verified evidence implicates Defendant, he has a strong interest in determining how the informant acquired information that he participated in the washing machine heist.

Furthermore, Defendant claimed at the hearing and in its post-hearing brief that the informant's identity is not a secret; it is the ex-girlfriend of brother Johnny. (See doc. no. 531, p. 4.) Defendant thus contends he has a strong interest in cross-examining her regarding

5

possible bias and motive that could influence her testimony. Indeed, how she obtained such intimate information as GPS tracking of Johnny Harrington's phone is ripe for cross-examination. (See id. at 5-6.) The government has not responded to these arguments.

The government contended at the hearing that revealing the informant's identity could endanger the safety of the investigation. (Doc. 530, p. 52.) However, it appears the informant's identity is known to Defendant, something the government has not refuted. Even if "the government also has an obligation to protect his/her identity as the source requested," they failed to do so; Cpl. Balmer repeatedly refers to the informant as "Mrs. Berry" in his police report obtained by Defendant. (Doc. no. 532, p. 11; doc. no. 531, Ex. A, p. 15.) Defendant repeatedly contends in its brief that the "Mrs. Berry" in the police report is the confidential informant, and the government does not contest this. (See doc. no. 531, pp. 4, 6-8.) The government presents no strong justification for failing to provide the confidential informant as an adverse witness for Defendant to cross-examine.

Accordingly, the confidential informant's hearsay testimony should be excluded. Because the balancing test weighs in favor of Defendant, the Court need not analyze whether the hearsay statement was reliable.

**C.  Without the Confidential Informant's Testimony, the Government Fails to Establish Probable Cause for Violation One.**

With the evidence of the confidential informant excluded, the government cannot establish probable cause for Violation One. At the hearing, Cpl. Balmer testified:

> All I have [other than the confidential informant's information] is . . . what they said during the interview about when they traveled there their [sic] conflicting statements of whose truck they were in and what the descriptions of the truck—where [Defendant] stated they were in Johnny's truck and it was

6

a red truck with a white hood and his brother Johnny stated they were in [Defendant's] truck which is a gray over white Volvo Truck.

(Doc. 530, p. 26.)

This sparse evidence hardly connects Defendant to the crime. Although both Defendant and Johnny admitted to riding together "a week or two prior to the investigation," they never stated they rode together on the night of the robbery. (Id. at 10, 26.) Even if the informant's GPS screenshot establishes Johnny's presence at the truck stop, it indicates nothing about Defendant. (Id. at 20.) Furthermore, even though Defendant was known to drive a white and gray truck, there is no evidence that the white truck identified by the informant was in fact Defendant's. (Id. at 22-23.)

Because the only evidence tying this defendant specifically to the stolen washing machines is the information provided by the tipster, there is no probable cause after the exclusion of the informant's hearsay statements.

### III. CONCLUSION

In light of the foregoing and based upon the testimony and evidence presented at the preliminary hearing, I find that probable cause does not exist as to Violation One of the petition for violation of conditions of supervised release.

SO ORDERED this 7th day of February, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA